**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN MORAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SUSAN C. MORAN, <br><br> Defendant. | Civil Action No. 22-1298 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

This matter comes before the Court on its September 9, 2022 Order to Show Cause (the "September Order") regarding whether this Court is the proper forum to hear this matter. (September Order, ECF No. 13.) Plaintiffs Kevin Moran, Olivia Kamm Moran, and Kayla Moran ("Plaintiffs") filed a response (ECF No. 14), and Defendant Susan C. Moran ("Defendant") replied (ECF No. 15). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court dismisses the action without prejudice.

**I.   BACKGROUND**

This action arises out of Plaintiffs' claim that they are the proper beneficiaries of their deceased father's life insurance proceeds. Plaintiffs are the three children born from the marriage of Lisa Hare ("Hare") and the deceased, Joseph V. Moran ("Moran"). (Am. Compl. ¶ 6, ECF No. 6.) Moran maintained a life insurance policy with New York Life Insurance Company (the "Policy"), which named Plaintiffs as irrevocable beneficiaries and provided a death benefit of $740,000. (*Id.* ¶ 16.) In or about July 2009, due to their divorce, Hare and Moran entered into an

undated Property Settlement Agreement (the "Agreement") in Bucks County, Pennsylvania, which included Moran's promise to maintain the Policy for Plaintiffs' benefit, among other matters. (*Id.* ¶¶ 18-20; Agreement § 19, ECF No. 6-2.)

Defendant, however, was the one married to Moran at the time of his death. (Am. Compl. ¶ 7.) And following Moran's death, Defendant received the Policy's proceeds. (*Id.* ¶ 25.) Outraged, Plaintiffs allege a claim of unjust enrichment against Defendant, whom they contend was "subsequently named gratuitously as beneficiary" of the Policy. (*Id.* ¶¶ 35-37.) Thus, Plaintiffs seek from Defendant the value of the proceeds, $740,000. (*Id.* ¶ 38.) Defendant, disagreeing with Plaintiffs' characterizations, moves to dismiss their suit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 9.)[1]

Relevant to the matter at hand, Plaintiffs allege that federal diversity jurisdiction is proper. (Am. Compl. ¶ 8.) However, as Plaintiffs also allege in their Amended Complaint, "[t]he [Agreement] provides in paragraph 24.2 that '[s]ubject matter and venue shall be proper in the Court of Common Pleas of Bucks County, Commonwealth of Pennsylvania for any action arising out of this Agreement . . . .'" (Am. Compl. ¶ 29 (quoting the Agreement).)[2] The Agreement also provides that "this Agreement shall be binding upon and shall inure the benefit of the parties to this Agreement and their respective heirs, executors, administrators, successors and agents," and that "[t]he Court of Common Pleas . . . *shall retain continuing jurisdiction over the parties* and the

---

[1] Hereafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

[2] The Court may consider the Agreement because it was attached to Plaintiffs' Amended Complaint and is central to their claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that a "document *integral to or explicitly relied* upon in the complaint may be considered" by the court (emphasis in original) (internal quotation and citation omitted)).

subject matter of the Agreement for the purpose of enforcement of any of the provisions thereof." (Agreement §§ 3.7, 28 (emphasis added).)

Subsequently, on September 9, 2022, the Court issued the September Order ordering Plaintiffs to establish whether the Agreement contains a forum selection clause making the Court of Common Pleas of Bucks County the appropriate forum for resolution of this matter and concomitantly whether this Court should exercise abstention. (September Order 3-4.) Pending review of the parties' submissions, Defendant's Motion to Dismiss was administratively terminated. (*Id.*) Both parties filed a response to the September Order. (Pls.' Resp., ECF No. 14; Def.'s Resp., ECF No. 15.)

## II.   **LEGAL STANDARD**

"A forum selection clause does not oust a court of subject matter jurisdiction." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212 n.7 (3d Cir. 1991) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). But "abstention is . . . predicated on the notion that while the federal court *has* subject [matter] jurisdiction, it should decline to *exercise* it." *Foster*, 933 F.2d at 1212 n.7 (emphasis in original).

"In a federal diversity case . . . federal law governs enforceability, or the 'effect to be given a contractual forum selection clause.'" *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 130 (D.N.J. 2020) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)); *see also In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) ("Federal law controls the question of whether to enforce a forum selection clause.") (citations omitted). A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Foster*, 933 F.2d at 1219 (internal quotation marks omitted) (citation omitted). Essentially, where parties to a contract "have

3

specified the forum in which they will litigate disputes arising from their contract, federal courts must honor the forum-selection clause '[i]n all but the most unusual cases.'" *Olde Homestead Golf Club v. Elec. Transaction Sys. Corp.*, 714 F. App'x 186, 188 (3d Cir. 2017) (alteration in original) (quoting *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 397 (3d Cir. 2017)).

Federal law may govern enforceability, but Third Circuit case law instructs the Court to look to state law in determining *scope*—whether the claims and parties involved in a particular dispute are subject to the particular forum selection clause at hand. *McGraw-Hill*, 909 F.3d at 58 (citing *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180-81 (3d Cir. 2017)). "State law . . . governs whether the clause covers a particular claim, as well as whether the clause applies to a non-signatory as an intended beneficiary or closely related party." *McGraw-Hill*, 909 F.3d at 58 (citing *Collins*, 874 F.3d at 183-86). And even in the presence of a contractual choice-of-law clause, "[courts] look to the choice-of-law rules of the forum state—the state in which the [d]istrict [c]ourt sits—in order to decide which body of substantive law to apply to a contract provision . . . ." *Collins*, 874 F.3d at 183.

### III. **DISCUSSION**

Neither Plaintiffs nor Defendant contests the presence or validity of the forum selection clause in Section 24.2 of the Agreement. (*See* Pls.' Resp. 3; Def.'s Resp. 5.) Indeed, Plaintiffs concede that the Court of Common Pleas of Bucks County is an appropriate forum to hear this matter. (Pls.' Resp. 3-4.) Defendant contends, however, that Bucks County is not an appropriate forum because: (1) the parties are not signatories to the Agreement and its forum selection clause, rendering it unenforceable; and (2) Pennsylvania courts do not have personal jurisdiction over Defendant and, even if the Agreement is binding on Defendant as Moran's "heir," the Agreement's

personal jurisdiction provision only applies to "the parties" of the Agreement. (Def.'s Resp. 4-6.) The Court addresses Defendant's arguments in turn.

A.   **Forum Selection Clause Scope and Interpretation**

Having established that state contract law, rather than federal common law, governs the interpretation of forum selection clauses, including scope, the Court must now determine which state's contract law applies. "New Jersey choice-of-law rules provide that '[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'" *Collins*, 874 F.3d at 183-84 (alteration in original) (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Here, the Agreement, in Section 31, states that it "shall be construed in accordance with the laws of the Commonwealth of Pennsylvania . . . ." (Agreement § 31.)

The New Jersey choice-of-law rules are not without bounds. *See Collins*, 874 F.3d at 184. New Jersey courts have held that a choice-of-law clause will not govern if: (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice"; or (2) "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state [in the issue] . . . and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Id.* (quoting *Instructional Sys.*, 614 A.2d at 133). Because neither consideration is at issue, and Defendant has not demonstrated that either exception should apply, the Court adheres to the New Jersey choice-of-law rules and upholds the designation of Pennsylvania law as governing over the Agreement's interpretation and scope. (*See generally* Def.'s Resp.)

The parties do not dispute whether the Agreement covers the claim in this case. (*See* Pls.' Resp. 3-5; *see generally* Def.'s Resp.) The Agreement provides: "[s]ubject matter and venue shall be proper in the Court of Common Pleas for the County of Bucks, Commonwealth of Pennsylvania for *any action* arising out of this Agreement, including resolving any disputes between the parties." (Agreement § 24.2 (emphasis added).) Here, the dispute certainly arises out of the Agreement, as it concerns the distribution of Moran's life insurance proceeds that the Agreement specifically addresses in Section 19. (*See* Agreement § 19 ("The parties stipulate and agree that [Moran] . . . shall name the parties' three children as irrevocable beneficiaries . . . .").)

The only question, then, is whether the parties, as non-signatories, are subject to the Agreement's forum selection clause—a question that Defendant answers in the negative. (Def.'s Resp. 5.) But Pennsylvania courts disagree with Defendant, routinely holding that non-signatories who financially benefit from contracts are bound by them. *See Kelly v. Bear Stearns & Co.*, No. 80832, 2001 WL 1807360, at *3 (Pa. Ct. Com. Pl. Dec. 18, 2001), *aff'd Kelly v. Bear, Stearns & Co.*, 813 A.2d 914 (Pa. Super. Ct. 2002); *see also Johnson v. Pa. Nat'l Ins. Cos.*, 527 Pa. 504, 508 (Pa. 1991) ("[T]hird party beneficiaries are bound by the same limitations in the contract as the signatories of the contract.").

Defendant also claims, citing to *federal* law, that she is not bound by the Agreement because enforcement could not have been foreseeable to her as a non-signatory to the Agreement given that the Agreement was signed years before Defendant met Moran. (Def.'s Resp. 5-6 (citing *McGraw-Hill*, 909 F.3d at 59-66).) The *McGraw-Hill* court laid out several pertinent considerations bearing on the applicability of a forum selection clause: (1) whether the non-signatories were intended third-party beneficiaries of the contract or closely related parties; (2) whether enforcement of the clause was reasonably foreseeable to the non-signatories; and

6

(3) whether the dispute is within the scope of the forum selection clause. 909 F.3d at 59.[3] But even assuming federal law governs, courts have rejected this "temporal proximity" argument in deciding whether a non-signatory is closely related to a signatory. *See Synthes, Inc. v. Emerge Med., Inc.*, 887 F. Supp. 2d 598, 613 (E.D. Pa. 2012) ("In fact, this [c]ourt's own review of relevant jurisprudence finds no mention of any temporal proximity requirement necessary to bind a non-signatory to a forum selection clause. All that is required are facts demonstrating a close relationship to the signatory or to the contractual dispute, such that application . . . was reasonably foreseeable."). Indeed, in *Synthes*, the court specifically rejected the defendant's argument that certain other individuals signed agreements "long before" they met the defendant and thus, that the defendant "could not possibly have been closely related to either of them when they signed their agreements." (*Id.*) As the wife of the deceased, the Court finds that Defendant was closely related such that application of the Agreement's forum selection clause was reasonably foreseeable. And as established above, the dispute is within the scope of the forum selection clause. Thus, the non-signatory Defendant is bound by the Agreement's forum selection clause.

### B.     **Personal Jurisdiction**

With regard to Defendant's final argument, the Court abstains from ruling on whether the Court of Common Pleas of Bucks County has personal jurisdiction over Defendant. This argument would be more appropriately raised before the Bucks County Court of Common Pleas if Plaintiffs decide to refile.

---

[3] The *McGraw-Hill* court included a fourth consideration: "whether the *Atlantic Marine*-modification to the § 1404(a) analysis applies when non-signatories are bound by a forum selection clause." 909 F.3d at 59 (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49 (2013)). Although *Atlantic Marine* is addressed below, its modification to the 1404(a) analysis is not applicable in the present case.

7

### C. *Atlantic Marine* Analysis

Dismissal is appropriate under the doctrine of *forum non conveniens*. As held in *Atlantic Marine*, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," as 42 U.S.C. § 1404(a) "has no application" in cases calling for a nonfederal forum. 571 U.S. at 60-61. "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 66. Because the Agreement's forum selection clause is valid, within the scope of this dispute, applicable to the parties, and enforceable, and because the Court of Common Pleas of Bucks County is a viable forum to hear this matter, the Court dismisses Plaintiffs' action under the doctrine of *forum non conveniens*. *See id.* at 60-61; *see also Victor Urb. Renewal Grp. LLC v. City of Camden*, No. 18-10841, 2019 WL 1434718, at *4 (D.N.J. Mar. 31, 2019) (dismissing plaintiff's complaint under *Atlantic Marine* and *forum non conveniens* because the parties selected the New Jersey Superior Court, a viable forum, to resolve a dispute over their agreement).

### IV. CONCLUSION

For the reasons stated above, the Court dismisses the Amended Complaint without prejudice under the doctrine of *forum non conveniens*.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE